# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:25-cv-01466 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| MNTN, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against MNTN, Inc. ("MNTN" or "Defendant") for infringement of United States Patent Nos. 10,360,571 ("the '571 Patent"), 11,042,890 ("the '890 Patent"), and 12,026,731 ("the '731 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant MNTN is a corporation organized and existing under the laws of Texas with a principal place of business located at 823 Congress Avenue #1827, Austin, Texas 78768.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.     This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.     This Court has personal jurisdiction over Defendant at least because Defendant maintains a principal place of business in this District and engages in continuous and systematic business activities within this District.

6.     This Court also has personal jurisdiction over Defendant at least because Defendant has committed acts of patent infringement giving rise to this action within the State of Texas and this judicial district and thus has established minimum contacts such that the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant maintains a regular and established place of business at 823 Congress Avenue #1827, Austin, TX 78768 which is in this District and has committed acts of patent infringement in this District.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

8.     Alpha Modus Corp. specializes in the development of innovative retail technologies.

9.     At the core of Alpha Modus's technology portfolio, including the Patents-in-Suit, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

10.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at

https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Patents-in-Suit.

11.    Alpha Modus has entered into several intellectual property licensing agreements outside of litigation.

12.    These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '571 PATENT

13.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571 Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A.

14.    The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

15.    The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

16.    The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

17.    The '571 Patent is valid and enforceable.

18.    The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

19.    The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

20.    The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.



FIG. 1



FIG. 2

21.    The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

22.    Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein
    (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices;
    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,
    (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,
    (vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,
(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,
(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons

who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and

(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,

    (ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,

    (iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location or by sending the marketing or advertising information to the mobile device of the person, and

    (iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon.

## THE '890 PATENT

23.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit B.

24.    The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

25.    The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

26.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

27.    The '890 Patent is valid and enforceable.

28.    The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

29.    The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

30.    The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



FIG. 1



*FIG. 2*

31.     The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

32.     Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
    a person at a retail store, wherein
        (i) the person is in proximity to at least one of the one or more information
            monitoring devices at the retail store,
        (ii) the one or more information monitoring devices are operably
            connected to (A) a server, (B) one or more databases, or (C) both, and
        (iii) the step of gathering information using the one or more information
            monitoring devices comprises
                (A) gathering object identification information of a product that the
                    person is interested in purchasing, and
                (B) gathering sentiment information of the person with respect to
                    the product;
(b) analyzing the information in real time using (A) the server, (B) the one or
    more databases, or (C) both gathered by the information monitoring devices
    about the shopping activities of the plurality of persons to manage inventory
    of the products in the retail store at the one or more product points, wherein
    the analyzed information comprises the object identification information and
    the sentiment information; and

(c) providing a response in real time based upon the analyzed information
gathered by the information monitoring devices, wherein the response is
selected from a group consisting of
  (i) sending a communication to the person directing the person to a
  location in the retail store at which the person can interact with the
  product,
  (ii) engaging the person based upon the product, wherein the engaging is
  performed using one more displays and content being displayed on the
  one or more displays is selected based upon the product,
  (iii) sending a communication to a second person in the retail store who
  can then in real time interact with the person regarding the product,
  (iv) providing marketing or advertising information to the person in real
  time based upon the product, wherein the marketing or advertising
  information is either product to the person by a display at the retail
  store or by sending the marketing or advertising information to a
  mobile device of the person, and
  (v) providing a coupon to the person in real time based upon the product,
  wherein the coupon is either a printed out coupon or a digital coupon.

## THE '731 PATENT

33.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and

Jim Wang, of all right, title, and interest in and to United States Patent No. 12,026,731 (the "'731

Patent") titled "Method For Personalized Marketing and Advertising of Retail Products," including

the right to sue for all past, present, and future infringement. A true and correct copy of the '731

Patent is attached to this Complaint at Exhibit C.

34.    The '731 Patent issued from U.S. Patent Application No. US18/100,377 filed on

June 23, 2023.

35.    The '731 Patent is a continuation of application No. 17/590,605, filed on Feb. 1,

2022, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

36.    The Patent Office issued the '731 Patent on July 2, 2024, after a full and fair

examination.

37.    The '731 Patent is valid and enforceable.

38.     The '731 Patent introduces a novel method for obtaining an information analysis of a shopper's activities, for tracking the shopper using information monitoring devices to determine location, and for providing targeted communications to that shopper based on their shopping history and real-time location.

39.     The '731 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of delivering personalized marketing and advertising tied to in-store behavior and purchase activity. The patent provides innovative solutions for enhancing consumer engagement and driving sales by delivering targeted coupons, promotions, and product information directly to shoppers.

40.     The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

41.     The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

42.     The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

43.     Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:

(a) obtaining an information analysis about the shopping activities of the person, wherein,

    (i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,

    (ii) the gathered information comprises gathered product interaction information of the person, wherein

        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more first information monitoring devices, and

        (B) the product interaction information is based upon shopping by the person of one or more first products,

(b) tracking the person using one or more second information monitoring devices to determine the location of the person;

(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises

    (i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and

    (ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of

        (A) a product communication of marketing or advertising information regarding the product,

        (B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

        (C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

        (D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and

        (E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## MNTN

44.    Defendant MNTN provides "Connected TV" ("CTV") technology which provides streaming advertising based upon information gathered about a person shopping at a store, such as site activity at an online store.

11

45.    MNTN offers technology, products, and services for running targeted TV advertising in partnership with customer brands and companies utilizing gathered demographic information for consumers in order to improve conversions, revenue, and site visits from consumers in response to the CTV advertising.

46.    MNTN states, in its Second Quarter 2025 financial results press release, that its products and services make CTV advertising as measurable, precise, and performance-driven as search and social advertising, and that MNTN's software is helping a new generation of marketers turn CTV into a core part of their growth strategy.

47.    MNTN provides scalable segmentation strategies utilizing Artificial Intelligence ("AI") to create audience models utilizing consumer demographic information in order to predict what a consumer is likely to do in the future in order to more effectively advertise to consumers utilizing streaming technology to view television on CTV platforms.

48.    MNTN serves a wide range of industries, including businesses providing property management services, educational services, lending, furniture, and counseling services, among others.

49.    Defendant's products and services practice the patented systems and methods of the Patents-in-Suit.

50.    Defendant's implementation of these patented technologies in its products and services has, on information and belief, significantly contributed to the efficiency and profitability of CTV advertising utilized by Defendant's customers.

51.    Defendant has been aware of Alpha Modus and the Patents-in-Suit at least as early as the filing of this Complaint.

52.     The financial gains accrued by Defendant and its customers through the use of Alpha Modus's patented technology have been substantial, providing MNTN and its customers with competitive advantages in the market.

53.     The benefits reaped by Defendant MNTN through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

54.     This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Defendant MNTN and by Defendant's customers in advertisin settings, which has led to significant commercial gains for Defendant MNTN and its customers at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT PATENT INFRINGEMENT OF THE '571 PATENT)

55.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

56.     Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including CTV advertising platforms utilizing Defendant's products and services including MNTN Matched™, Verified Visits™, Next Gen TV and other CTV and Performance TV products and services (collectively "the Accused Products").

57.     The Accused Products utilize one or more information monitoring devices to gather information about persons at a location, such as at CTV's associated with consumers.

58.     The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

59.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant's customers, such as CTV's associated with consumers.

60.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

61.    Defendant has directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

62.    The Accused Products satisfy each and every element of the asserted claim of the '571 Patent either literally or under the doctrine of equivalents.

63.    Defendant's infringing activities are and have been without authority or license under the '571 Patent.

64.    As a direct and proximate result of Defendant's infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

65.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '571 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in their CTV advertising operations.

66.    Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness, Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

67.     Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

68.     Therefore, Defendant's infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

69.     As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

70.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

71.     Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

72.     Defendant's customers have utilized the Accused Products in CTV advertising which practices the patented methods of the '571 Patent.

73.     Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '571 Patent.

74.     Defendant's knowledge of the '571 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent.

75.     Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '571 Patent.

76.     Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '571 Patent.

77.     As a direct and proximate result of Defendant's induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

78.     Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT PATENT INFRINGEMENT OF THE '890 PATENT)

79.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

80.     Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including CTV advertising platforms utilizing the Accused Products.

81.    The Accused Products utilize one or more information monitoring devices to gather information about persons at a location, such as at CTV's associated with consumers.

82.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

83.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant's customers, such as CTV's associated with consumers.

84.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

85.    Defendant has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

86.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

87.    Defendant's infringing activities are and have been without authority or license under the '890 Patent.

88.    As a direct and proximate result of Defendant's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

89.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '890 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendant's customers have continued to use the Accused Products in their CTV advertising operations.

90.     Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

91.     Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

92.     Therefore, Defendant's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

93.     As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

94.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

95.     Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

96.     Defendant's customers have utilized the Accused Products in CTV advertising which practices the patented methods of the '890 Patent.

97.     Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

98.     Defendant's knowledge of the '890 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

99.     Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '890 Patent.

100.     Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '890 Patent.

101.     As a direct and proximate result of Defendant's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

102.     Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT PATENT INFRINGEMENT OF THE '731 PATENT)

103.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

104.    Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '731 Patent, including CTV advertising platforms utilizing the Accused Products.

105.    The Accused Products utilize one or more information monitoring devices, such as at CTV's associated with consumers, for tracking the location of consumers using information monitoring devices, and for providing product communications and store location information based on such analyses, as claimed in the '731 Patent.

106.    The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

107.    The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, tracking the consumer's location relative to retail stores, and generating real-time communications including store-specific promotions, coupons, advertising, and purchase options.

108.    The Accused Products allow MNTN as well as MNTN's customers to provide targeted communications to consumers, including coupons, marketing messages, and purchase options such as pickup, delivery, and reduced-price offers during limited promotional periods, all in accordance with the claimed inventions of the '731 Patent.

109.    Defendant has directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

110.    The Accused Products satisfy each and every element of the asserted claim of the '731 Patent either literally or under the doctrine of equivalents.

111.    Defendant's infringing activities are and have been without authority or license under the '731 Patent.

112.    As a direct and proximate result of Defendant's infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

113.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '731 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in their CTV advertising operations.

114.    Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

115.    Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '731 Patent, despite its knowledge and understanding that its products and systems infringe the '731 Patent.

116.    Therefore, Defendant's infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

117.    As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

118.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

119.    Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '731 Patent.

120.    Defendant's customers have utilized the Accused Products in CTV advertising which practices the patented methods of the '731 Patent.

121.    Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '731 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '731 Patent.

122.    Defendant's knowledge of the '731 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent.

123.    Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '731 Patent.

124.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and

staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '731 Patent.

125.    As a direct and proximate result of Defendant's induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

126.    Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against Defendant as follows:

(A)    An entry of judgment that Defendant has infringed and is directly infringing one or more claims of each of the Patents-in-Suit;

(B)    An entry of judgment that Defendant has infringed and is indirectly infringing one or more claims of each of the Patents-in-Suit;

(C)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

(D)    An entry of judgment that the Patents-in-Suit are valid and enforceable;

(E)    An order awarding damages sufficient to compensate Alpha Modus for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that Defendant's infringement has been willful, wanton, deliberate, and egregious;

(G)    A determination that the damages against Defendant be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)    A finding that this case against Defendant is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)    An accounting of all infringing sales and revenues of Defendant, together with post judgment interest and prejudgment interest from the first date of infringement of the each of the Patents-in-Suit; and

(J)    Such further and other relief as the Court may deem proper and just.

Dated: September 10, 2025                    Respectfully submitted,

                                            /s/ *Christopher E. Hanba*
                                            Christopher E. Hanba
                                            Texas Bar No. 24121391
                                            chanba@princelobel.com
                                            Joshua G. Jones
                                            Texas Bar No. 24065517
                                            jjones@princelobel.com
                                            Bryan D. Atkinson
                                            Texas Bar No. 24036157
                                            batkinson@princelobel.com

                                            PRINCE LOBEL TYE LLP
                                            500 W. 2nd Street, Suite 1900
                                            Austin, Texas 78701
                                            Telephone: (512) 737-2415

                                            *Attorneys for Plaintiff Alpha Modus, Corp.*